## IN THE UNITED STATES DISRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**TERRENCE SCHMIDT**                                    **Case No.** 19-CV-763

      Plaintiff

v.

**FIFTH THIRD BANK**

      Defendant

_____/

## COMPLAINT FOR DAMAGES
### (with Jury Demand)

Now comes Plaintiff Terrence Schmidt ("Plaintiff or "Borrower"), by and through the undersigned counsel, and hereby files his *Complaint* against Defendant Fifth Third Bank ("Defendant", "Fifth Third" or "Servicer") as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is the fee simple owner of real property located at and commonly known as 1460 Royal Forest Loop, Lakeland, FL 33811 (the "Property").

2. Plaintiff currently maintains the Property as his primary, principal residence.

3. Defendant is an Ohio banking corporation whose principal address is Fifth Third Center, 28 Fountain Square Plaza, Cincinnati, OH 45263.

4. Defendant is the current servicer and alleged owner of a note (the "Note") and a mortgage on the Property that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan"). See attached true and correct copy of the Note as *Exhibit A* and true and correct copy of the Mortgage as *Exhibit B*.

5.  This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

6.  This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X.

7.  This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. § 1367.

8.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Property as Plaintiff's primary residence.

## **INTRODUCTION**

9.  In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

11. The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

12. Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.7000.

2

13. Plaintiff is asserting a claim for relief against Defendant for breaches of the specific rules under Regulation X as set forth below.

14. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## **BACKGROUND**

15. Defendant began servicing the Loan on or about July 26, 2013. Defendant allegedly services the Loan on behalf of non-Party Federal National Mortgage Association ("Fannie Mae").

16. At the time of the filing of this Complaint, Defendant has had more than consumer complaints lodged against them nationally. Each such complaint is filed and cataloged in the Consumer Financial Protection Bureau's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

17. At all points in time, Plaintiff has merely wanted to exercise his right to be properly reviewed for loss mitigation options by Defendant so that Plaintiff could get out of default status on the Loan, resume making proper, timely payments on the Loan to Defendant, and begin to rehabilitate his credit. Defendant, however, has engaged in a pattern and practice of behavior that sought to hinder Plaintiff from obtaining a loan modification and force Plaintiff to incur unnecessary expenses.

18. Borrower was experiencing hardship and contacted Fifth Third immediately to request assistance.

19. Borrower filed a Chapter 13 bankruptcy petition in July 2013, Case No. # 8:2013-bk-09720                                        in                                        the

Bankruptcy Court for the Middle District of Florida and made mortgage payments to Fifth Third through the bankruptcy.

20. Borrower and Fifth Third went to mediation in the bankruptcy case but Fifth Third refused to modify the Borrowers' Loan.

21. After the bankruptcy case was discharged, Fifth Third filed a Foreclosure Action against Borrowers on August 11, 2015, Case # 2015-CA-2959, in the Polk County Florida Circuit Court styled Fifth Third Bank v. Terrence and Wendy Schmidt, et. al. ("Foreclosure Case").

22. A foreclosure judgment was entered against Borrower on August 23, 2016 in the Foreclosure Case and a sale was set for October 25, 2016.

23. Borrower appealed the judgment to the Florida Second District Court of Appeal but the judgment was affirmed on November 15, 2017.

24. October 5, 2018, Borrower submitted a facially complete loan modification containing all of the information and documentation requested by and through Defendant's standard loss mitigation application ("Application") through new foreclosure counsel to Fifth Third's Foreclosure counsel McCalla Raymer.  (see attached *Exhibit C*) On October 12, 2018, Fifth Third's counsel acknowledged receipt of the Application. (see attached *Exhibit C*)

25. On October 18, 2018, Plaintiff filed a Petition for Bankruptcy in the Bankruptcy Court of the Middle District of Florida, Case # 18-bk-08923-8W3.

26. On November 6, 2018, the bankruptcy case was dismissed.

27. On December 6, 2018 Defendant filed a Motion to Reset Sale. (see *Plaintiff's Exhibit D*)

28. On February 18, 2019, an Order was entered by the Judge in the Foreclosure Case resetting the sale for April 1, 2019.

29. On or about March 7, 2019, Plaintiff sent correspondence to Defendant through the undersigned counsel captioned "Notice of Error" via Priority Mail through the US Postal Service [Tracking No. 9405 5036 9930 0440 5752 04] ("NOE #1).  A copy of NOE #1 attached as *Plaintiff's Exhibit E.*

30. On or about March 7, 2019, Plaintiff sent correspondence to Defendant through the undersigned counsel captioned "Request for Information" via Priority Mail through the US Postal Servicer [Tracking No. 9405 5036 9930 0440 5752 04 ] ("RFI #1).  A copy of RFI #1 is attached as *Plaintiff's Exhibit F.*

31. By and through NOE # 1, Plaintiff alleged that Defendant committed multiple distinct and separate errors in the servicing of the Loan.

32. By and through NOE # 1, Plaintiff alleged that Defendant committed  clear, distinct, and separate errors in the servicing of the Loan by failing to send the written notices required by 12 C.F.R. § 1024.41(b)(2)(i)(B) acknowledging receipt of the Application, Application 2 and Application 3 within five (5) days, excluding legal public holidays, Saturdays, and Sundays.

33. By and through NOE # 1, Plaintiff alleged that Defendant committed  clear, distinct, and separate errors in the servicing of the Loan by failing to treat the facially complete Application, Application 2 and Application 3 as complete for purposes of the foreclosure prohibitions until the borrower is given reasonable opportunity to complete the application as required by 12 C.F.R. § 1024.41(c)(2)(iv).

34. By and through NOE # 1, Plaintiff alleged that Defendant committed a clear, distinct, and separate error in the servicing of the Loan by moving forward with the foreclosure sale of the Property notwithstanding the pending loss mitigation.

35. A foreclosure sale is still set for April 1, 2019 in the Foreclosure Case.

36. Borrower has never received any correspondence or communication from Fifth Third as to the loan modification application submitted to date other than acknowledgement of receipt.

37. By failing to acknowledge Borrower's loan modification application, request all needed documents upon initial review of Borrower's application, timely review and make a decision on the loan modification application, proceeding with a foreclosure action and proceeding to set a foreclosure auction sale, Fifth Third has committed a number of violations of RESPA and Regulation X.

38. As a mortgage servicer, Fifth Third had a duty pursuant to RESPA and Regulation X to timely process the Borrower's loss mitigation applications. Any delay in processing which causes harm to the Borrower's ability to obtain certain loss mitigation options are damages caused by Fifth Third.

39. Fifth Third's errors have caused and continue to cause Borrower damages including prolonged delinquency, attorneys' fees and costs handling the Foreclosure Case and attorneys' fees and costs preparing notices of error, pursuing loss mitigation and filing this lawsuit.

40. In addition, Borrower has suffered emotional distress due to concern over the loss of his home which has resulted in physical injury for which he has sought medical attention. This has in turn resulted in loss of income and loss of wages/employment.

41. At the time of the filing of this Complaint, Defendant has had more than 5300 consumer complaints lodged against them nationally. Each such complaint is filed and cataloged in the Consumer Financial Protection Bureau's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/)

42. Defendant's willful actions in their handling of the Foreclosure Case and the related loss mitigation process have caused Plaintiff to incur further legal expenses and damages in the Foreclosure Case by having to continue to incur legal expenses in the defending the foreclosure and preapring requests for information and notices of error as outlined, *infra*

43. Further, Defendant's pattern and practice of willful actions have caused Plaintiff to suffer emotional distress driven by the fear that he might lose and be forced to leave his family home which has resulted in anxiety, depression, embarrassment, and other emotional distress, as well as a great deal of strain and damage to his relationship with his wife.

44. Plaintiff's fear of losing his family home was directly exacerbated by the willful and improper actions of Defendant because Defendant's actions prevented Plaintiff from exercising all of options to which Plaintiff is entitled to save his home.  Defendant's actions have caused an unnecessary delay in the review of Plaintiff's loss mitigation forcing him to unnecessarily remain in default status for a longer period of time than if Defendant would have complied with Regulation X, which has caused unnecessary continued harm to Plaintiff's credit.

45. Had Defendant handled Plaintiff's loss mitigation application properly, then the foreclosure auction sale date would have been deferred by Defendant.

46. The actions of Defendant, and the refusal to correct their errors by being willfully ignorant and/or feigning ignorance, have left Plaintiff to suffer further damages including continued harm to his credit for the foreseeable future.

47. Had Defendant properly handled Plaintiff's loss mitigation application pursuant to Regulation X, Plaintiff would have been able to properly exercise his rights in seeking loss mitigation options and would not have had to file for bankruptcy protection.

## <u>COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.41(b)(2)</u>

**(Failure to Provide Written Notification of Receipt of Loss Mitigation Application and Notification of Servicer's Determination as to Completeness of Loss Mitigation Application)**

48. Plaintiff restates and incorporates herein his statements and allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten herein.

49. 12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

50. 12 C.F.R. §1024.41(b)(2) further provides that if the servicer determines that the application is incomplete, then the written notice to the borrower must provide which additional documents are required to complete the loss mitigation application and a reasonable date by which the borrower must submit such documents.

51. Defendant was in receipt of or otherwise deemed to be in receipt of the Application as of October 12, 2018.

52. Defendant was required, pursuant to 12 C.F.R. § 1024.41(b)(2) to review the Application and provide written notice to Plaintiff on or before October 19, 2018, stating that the packet is either complete or that the packet is incomplete.

53. If Defendant determined that the Application was incomplete, the written notice to Plaintiffs, as required by 12 C.F.R. §1024.41(b)(2), needed to provide which additional documents were required to complete the Application and a reasonable date by which Plaintiff would be required to submit the additional documents.

54. Defendant did not provide any written notice as to whether Application 3 was complete on or before October 19, 2018.

55. Defendant's failure to provide the written notice required by 12 C.F.R. §1024.41(b)(2) on or before October 19, 2018, constitutes a willful violation of 12 C.F.R. §1024.41(b)(2).

56. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

57. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.41(c)(2)(vi)

**(Failing to Treat the Facially Complete Applications as Complete for Purposes of the Foreclosure Prohibitions until the Borrower is given Reasonable Opportunity to Complete the Application)**

58. Plaintiff restates and incorporates herein his statements and allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten herein.

59. 12 CFR 1024.41(c)(2)(iv) provides that a servicer must treat a facially complete application as complete for purposes of the foreclosure prohibitions until the borrower

is given reasonable opportunity to complete the application as required by 12 C.F.R. § 1024.41(c)(2)(iv).

60. As indicated above, Borrower submitted a facially complete loss mitigation applications and transmitted same to Defendant.

61. Defendant did not even acknowledge receipt of any of the applications (except Application 3 via an email by their Foreclosure counsel) let alone advise Borrower his applications were incomplete or request any additional information.

62. Defendant's failure to treat the Application as facially complete for purposes of the prohibitions on foreclosure sale as required by 12 C.F.R. §1024.41(c)(2)(iv) constitute willful violations of 12 C.F.R. §1024.41(c)(2)(iv).

63. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

64. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: VIOLATIONS OF 12 C.F.R. § 1024.41(g)

### (Violation of Prohibition on Moving in Support of Foreclosure Judgment with Loss Mitigation Application Pending)

65. Plaintiff restates and incorporates herein his statements and allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten herein.

66. 12 C.F.R. § 1024.41(g) states that if a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more than thirty-seven (37) days before a foreclosure sale, then a servicer cannot move for foreclosure judgment or order of sale unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. § 1024.41(c)(1)(ii), stating that the borrower is not eligible for

any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

67. Comment 2 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(g) provides that:

> Nothing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure process, including any publication, arbitration, or mediation requirements established by applicable law, when the first notice or filing for a foreclosure proceeding occurred before a servicer receives a complete loss mitigation application so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale, in violation of § 1024.41.

68. 12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or *no additional information is requested in such notice, the application shall be considered facially complete*" (emphasis added).

69. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(c)(2)(iv) provides that 12 C.F.R. § 1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

70. Comment 1 of the official CFPB interpretations of 12 C.F.R. § 1024.41(b)(3) that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

71. None of the exemptions listed in subparagraphs (1)-(3) of 12.1024.41(g) apply to the Plaintiff.

72. As set forth in the Official Bureau Interpretations comment 41(g)-2, 12 C.F.R. Appendix Supplement I to Part 1024, nothing prevents the servicer from proceeding with the foreclosure process upon receipt of the loss mitigation application, "so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale in violation of § 1024.41."

73. As also set forth in the Official Bureau Interpretations comment 41(g)-5, 12 C.F.R. Appendix Supplement I to Part 1024, conducting a foreclosure sale, where none of the above conditions are applicable, is prohibited by law, "even if a person other than the servicer administers or conducts the foreclosure sale proceedings."

74. Plaintiff submitted a facially complete loss mitigation application to Defendant at which was acknowledged by Defendant's Foreclosure counsel. The Plaintiff's home is set for sale on April 1, 2019 in violation of 1024.41(g).

75. Attorney Andrea Roebuck sent the Application to Defendant through its Foreclosure Counsel McCalla Raymer on October 5, 2018.   McCalla Raymer confirmed receipt of the Application on October 12, 2018.

76. Defendant was in receipt of or otherwise deemed to be in receipt of the Application as of October 12, 2018.

77. Defendant did not provide the written notice required by 12 C.F.R. §1024.41(b)(2) at any time.

78. Defendant was in receipt of or otherwise deemed to be in possession of a facially complete loss mitigation application as of October 12, 2018.

79. When the foreclosure sale was reset on February 18, 2019, Defendant had not sent written notice pursuant to 12 C.F.R. § 1024.41(c)(1)(ii), stating that Plaintiff was not eligible for any loss mitigation options

80. Despite Defendant's Foreclosure counsel acknowledging receipt of the Application on October 12, 2018, putting Defendant's counsel on notice of the fact that Plaintiff had submitted Application, Defendant willfully chose to be ignorant of such and "stick their heads in the sand" so that they could proceed forward with the resetting of the foreclosure sale.

81. Further, evidence shows that the actions of Defendant and their Foreclosure counsel constituted willful ignorance because e-mails to Defendant's Foreclosure Counsel were received in normal course and were even responded to in a relatively timely matter.

82. Plaintiff's actions in moving forward with a foreclosure sale prior to completing a review of Plaintiff's eligibility for any and all loss mitigation options pursuant to the Application as required by 12 C.F.R. §1024.41 constitute clear, separate, and distinct violations of 12 C.F.R. § 1024.41(g).

83. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

84. As a result of Defendant's actions, Defendant is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

85. The actions of Defendant and their counsel exemplify a concerted effort and the use of tactics to willfully circumvent Defendant's obligations pursuant to 12 C.F.R. § 1024.41(g) such that punitive damages should be awarded.

## PRAYER FOR RELIEF

86. Plaintiff incurred actual damages in the form of (1) costs and legal fees incurred to prepare a request for information and notice of error, together with the attorneys' fees and costs related to the Motions to Cancel Sale and this federal litigation; (2) costs incurred in connection with the photocopying and mailing of the Application (3) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X (4) emotional distress over the loss of his home and 5) and loss of income due to emotional distress.  Further, Plaintiff alleges that Defendant's actions or lack of actions are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f).  The pattern or practices includes doing  publications of sale and moving to reset the sale.  Regulation X allows for up to $2,000 in statutory damages per pattern or practices.  Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

87. The actions of Defendant and their counsel exemplify a concerted effort and the use of tactics to willfully circumvent Defendant's obligations pursuant to 12 C.F.R. § 1024.41(g) such that punitive damages should be awarded.

**WHEREFORE,** Plaintiff prays that this Court enter its order granting judgment for the following:

A.)   For actual damages, costs, and reasonable attorney fees;

B.)   For statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every count contained in Counts One, Two and Three;

C.)   For punitive damages to the extent that this Court may deem appropriate;

D.)   Such other relief which this Court may deem appropriate.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

Dated March 28, 2019.

> Respectfully submitted,
> **THE ADVOCACY GROUP**
> 200 SE 6th St., Ste. 504
> Fort Lauderdale, Florida 33301
> Telephone: (954) 282-1858
> Facsimile: (844) 786-3694
> Email: service@advocacypa.com
>
> /s/ Jessica L. Kerr
> Jessica L. Kerr, Esquire
> FLORIDA BAR NO. 92810